UNITED STATES BANKRUPTCY COURT                    HEARING DATE: 1/16/2020
SOUTHERN DISTRICT OF NEW YORK                     @ 2:00 P.M.

------------------------------------------------------------ x
In re:                                               :
                                                     :
ANTHONY J. BARTOLOMEO,                                :    Case No. 19-12294 (SCC)
                                                     :
                          Debtor.                    :
------------------------------------------------------------ x
CRESCENT ELECTRIC SUPPLY COMPANY,                    :
INC. OF NEW YORK,                                    :
                                                     :
                          Plaintiff,                 :
                                                     :
              -against-                              :    Adv. Proc. No. 19-01328 −SCC
                                                     :
ANTHONY J. BARTOLOMEO,                                :
                                                     :
                          Defendant.                 :
------------------------------------------------------------ x


### MEMORANDUM OF LAW IN
### SUPPORT OF DEFENDANT'S MOTION TO DISMISS
### <u>ADVERSARY PROCEEDING</u>


Dated: November 19, 2019              Rattet PLLC
                                      Attorneys for Defendant
                                      202 Mamaroneck Avenue
                                      White Plains, New York 10601
                                      (914) 381-7400
                                      James B. Glucksman, Esq.
                                      Of Counsel on Brief

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STANDARDS FOR DECIDING THE MOTION TO DISMISS...................................... 2

SUMMARY OF ARGUMENT ........................................................................................ 3

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT................................................................................................................... 5

POINT I .......................................................................................................................... 5

CRESCENT CANNOT MEET ITS BURDEN OF PLEADING IN ORDER TO
ESTABLISH A RIGHT TO DENIAL OF DISCHARGEABILITY OR DISCHARGE ... 5

POINT II ......................................................................................................................... 6

THE DEBTOR'S ALLEGED DEBTS TO CRESCENT DO NOT MEET ANY
EXCEPTION TO DISCHARGEABILITY ...................................................................... 6

    A.    THE COMPLAINT FAILS TO PLEAD A TECHNICAL OR PRE-EXISTING
    TRUST IN THE SECOND CAUSE OF ACTION AND THUS DOES NOT STATE A
    CLAIM FOR DISCHARGEABILITY UNDER 11 U.S.C. §523(a)(4) ........................ 6

    B.    DEFENDANT MUST SUBJECTIVELY INTEND TO INJURE CRESCENT
    FOR A DEBT TO BE HELD NONDISCHARGEABLE PURSUANT TO 11 U.S.C. §
    523(a)(6) ........................................................................................................... 11

    C.    THE NONDISCHARGEABILITY COMPLAINT RELATING TO ACTUAL
    FRAUD UNDER 11 U.S.C. §523(a)(2) MUST BE DISMISSED............................... 14

POINT III....................................................................................................................... 15

THE COMPLAINT FAILS TO PLEAD A VIOLATION OF ARTICLE 3-A OF THE
LIEN LAW .................................................................................................................... 15

POINT IV....................................................................................................................... 19

PLAINTIFF ALLEGES IN PARALLEL DISCHARGEABILITY ACTION THAT
DEGENNARO IS THE MAJORITY SHAREHOLDER OF INNOVATIVE AND IS
THUS ESTOPPED FROM INCONSISTENT PLEADING THAT THE DEBTOR IS
THE MAJORITY SHAREHOLDER OF INNOVATIVE ............................................... 19

POINT V ........................................................................................................................ 22

CRESCENT IS BOUND BY THE STATE COURT'S DETERMINATION WITH
RESPECT TO THESE CLAIMS .................................................................................... 22

CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

Bonham v. Coe, 292 N.Y.S. 423, 429, 249 A.D. 428, 433 (N.Y.A.D. 4 Dept. 1937)...... 17

Bullock v. BankChampaign, N.A. (In re Bullock), 133 S.Ct. 1754, 1760, 185 L.Ed.2d 922 (2013)............................................................................................................. 2

Bullock, Id.................................................................................................. 6, 7

Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. ,1998)............ 14

Chao v. Duncan (In re Duncan), 331 B.R. 70, 76 (Bankr. E.D.N.Y. 2005) ...................... 6

Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 558 (1895) .............................................. 21

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)............................ 19

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 & n. 16, 103 S.Ct. 1303, 1314 & n. 16, 75 L.Ed.2d 206 (1983).................................................... 22

Edgewater Const. Co., Inc. v. 81 & 3 of Watertown, Inc., 769 N.Y.S.2d 343, 346, 1 A.D.3d 1054, 1057 (N.Y.A.D. 4 Dept.,2003)................................................... 17

Fulton v. Hankin & Mazel, PLLC, 18 N.Y.S.3d 654, 658, 132 A.D.3d 806, 809 (N.Y.A.D. 2 Dept.,2015)........................................................................... 17

Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)................ 12

Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)........... 6, 22

Halebian v. Berv, 644 F.3d 122, 131 (2d Cir. 2011) ....................................................... 19

In re Dziuk, 218 B.R. 485 (Bankr.D.Minn. 1998)........................................................... 13

In re Galeries des Monnaies of Geneva, Ltd. 55 B.R. 253 (Bkrtcy. S.D.N.Y. 1985)....... 20

In re Galeries des Monnaies of Geneva, Ltd. 62 B.R. 224 (S.D.N.Y. 1986).................... 20

In re Halpin, 370 B.R. 45, 49 (N.D.N.Y., 2007 ................................................................. 8

In re Hyman, 502 F.3d 61, 68 (2d Cir. 2007) .................................................................... 8

In re Krautheimer, 241 B.R. 330 (Bankr.S.D.N.Y.1999) ................................................ 12

In re Larsen, 2018 WL 4006935, at *5 (Bkrtcy.E.D.N.Y., 2018) ...................................... 8

In re New York Title & Mortg. Co., 297 N.Y.S. 524, 527, 163 Misc. 454, 456 (N.Y.Sup. 1937).................................................................................................................. 18

In re Roundabout Theatre Company, 131 B.R. 14, 18 (S.D.N.Y. 1991)........................ 21

In re Stelluti, 94 F.3d 84 (2d Cir. 1996)........................................................................... 11

In re Wong, 291 B.R. 266 (Bankr.S.D.N.Y. 2003)............................................................ 9

In re Wong, 291 B.R. 266 (Bkrtcy.S.D.N.Y.,2003)...................................................... 9, 10

In reHalpin, 566 F.3d 286 (2d Cir. 2009)................................................................... 17, 18

Ippolito v. TJC Development, LLC, 920 N.Y.S.2d 108, 118, 83 A.D.3d 57, 70–71 (N.Y.A.D. 2 Dept.,2011)............................................................................. 16

I-T-E Imperial Corporation-Empire Division v. Bankers Trust Co., 423 N.Y.S.2d 491, 492, 73 A.D.2d 861, 861 (N.Y.A.D., 1980)................................................ 18

Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 1974 (1998)...................................... 11, 12

Kelleran v. Andrijevic, 825 F.2d 692 (2d Cir.1987)......................................................... 22

Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934)............................ 5

Mallis Supply Company, INC. and Reliable Equipment Corp. Plaintiffs, v. ABN Associates LLC, Lafayette Avenue LLC, JRM Construction Management LLC, Danica Group LLC, Vigilant Insurance Company and Thomas Andreadakis, Defendants, Supreme Court, Bronx, Index No. 24952/2015E...................................................... 16

National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio), 91
   F.3d 296, 300 (2d Cir. 1996)........................................................................................ 5
New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968
   (2001) .......................................................................................................................... 20
Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ............. 22
Rosenschein v. Kleban, 918 F.Supp. 98, 106 (S.D.N.Y. 1996)........................................ 21
Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ... 14, 15
Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.  250 N.Y. 304 (N.Y. 1929) ........ 23
Shao Ke v. Jianrong Wang, 628 Fed.Appx. 10, 12 (2d Cir. 2015)................................. 6, 8
Smith v. Meyers (In re Schwartz & Meyers), 130 B.R. 416, 422 (Bankr.S.D.N.Y. 1991)  5
Wong, Id. ........................................................................................................................... 10

## Statutes
11 U.S.C. § 523 (a)(4)......................................................................................................... 6
11 U.S.C. § 523(a)(2)(A) ................................................................................................... 14
11 U.S.C. §523(a)(2) or (4)................................................................................................. 6
CPLR §3016(b)................................................................................................................... 24
Lien Law Article 3-A ............................................................................................... 4, 15, 16
Lien Law Section 70 et. seq. .............................................................................................. 15
Section 72(1) of the Lien Law ........................................................................................... 15

## Rules
Fed. R. Civ. P. 8 .................................................................................................................. 2
Fed.R. Bankr. P. 7008 ......................................................................................................... 2
Fed.R.Civ.P. 12(b) (6)......................................................................................................... 2
Fed.R.Civ.P. 12(e) .............................................................................................................. 2
Fed.R.Civ.P. Rule 9 ....................................................................................................... 2, 24

## PRELIMINARY STATEMENT

This adversary proceeding to except the purported claim of Crescent Electric Supply Company, Inc. of New York ("Crescent" or "Plaintiff") from the discharge under 11 U.S.C. §523(a)(2), (4) and (6) (the "Non-Dischargeability Claims"). The causes of action asserted in the State Court Action[1] for breach of contract, account stated, unjust enrichment, goods sold delivered and accepted, to pierce the corporate veil, and recovery of attorneys' fees as asserted against Bartolomeo were dismissed pursuant to CPLR 3211 (a)(7) by the State Court. The claims under Article 3-A of the Lien Law, upon which this Complaint is based were dismissed without prejudice. This Complaint mimics virtually word for word the State Court Complaint that the Court, in the State Court decision found deficient.

The primary purpose of the Bankruptcy Code is to give debtors a fresh start after a debtor has suffered a financial crisis. This "fresh start" is achieved through various provisions of the Bankruptcy Code. The most well-known provision, though by no means the only such provision, is the discharge from all but a narrow category of debts. See, e.g. 11 U.S.C. §§ 727, 1141, 1228 and 1328.

This Memorandum of Law is respectfully submitted in support of the motion of Anthony Bartolomeo, the above-captioned Debtor/Defendant ("Debtor", "Bartolomeo" or "Defendant"), to dismiss the Complaint filed by Crescent in the above-captioned Adversary Proceeding. This Memorandum of Law will demonstrate that the Complaint must be dismissed as a matter of law, since inter alia: (a) the claims asserted by Crescent

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in the accompanying Declaration of Anthony Bartolomeo dated November __, 2019 (the "Bartolomeo Declaration"). All exhibit references refer to attachments to the Bartolomeo Declaration.

1

in the State Court Action have previously been dismissed; (b) Plaintiff has not rectified

the pleading deficiencies pointed out by the State Court; and (c) the allegations are

insufficient to meet decisional law in the U.S. Supreme Court in, inter alia, <u>Bullock v.</u>

<u>BankChampaign, N.A. (In re Bullock)</u>, 133 S.Ct. 1754, 1760, 185 L.Ed.2d 922 (2013)

and its progeny.

The Complaint must be therefore be dismissed as a matter of law. The Complaint

must set forth plausible grounds for relief to be granted, and this Complaint fails woefully

in this regard. Therefore, the Complaint fails to state a cause of action and must be

dismissed pursuant to Fed.R.Civ.P. 12(b) (6). Alternatively, Crescent must serve a more

definite statement as required by Fed.R.Civ.P. 12(e) and Fed.R.Civ.P. Rule 9.[2]

## STANDARDS FOR DECIDING THE MOTION TO <u>DISMISS</u>

The burden of proof with regard to an objection to dischargeability is on the

objecting party. For this reason, objections pursuant to 11 U.S.C. §523(a) must be strictly

construed against Crescent. Fed.R. Bankr. P. 7008 and Fed. R. Civ. P. 8 require that

every complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief..." See, e.g. <u>Twombly</u>, <u>Id.</u>, and <u>Iqbal</u>, <u>Id.</u> The required level of

pleading is not met merely by pleading facts that are consistent with a right to relief.

Rather, in order to state a claim, a complaint must allege facts that **plausibly show** the

existence of a right to relief if those facts are proved true.

---

[2] The Court should note that Plaintiff asserted virtually identical claims in the State Court Action. Certain of these claims were dismissed with prejudice. Other claims were dismissed with leave to replead with specificity. Since this Complaint does not add any further specificity the Debtor prays for the dismissal of same with prejudice.

## SUMMARY OF ARGUMENT

For the purposes of determining a motion to dismiss, the Court must rely upon the well-pleaded allegations of the Complaint. The Court, however, is not constrained to adopt Crescent's legal conclusions.

This Complaint must be dismissed for the following reasons: 1) res judicata or claim preclusion; 2) collateral estoppel or issue preclusion; 3) judicial estoppel to assert that the Debtor is a 51% shareholder of Innovative; 4) lack of specificity in pleading of claims based on fraud or trust fund violations; 5) lack of allegation of details sufficient to identify claims for purposes of framing a responsive pleading; and 6) lack of a trust relationship that is actionable under the dischargeability provisions of the Bankruptcy Code.

## STATEMENT OF FACTS

The facts as described in the Complaint are briefly summarized inasmuch as they are not relevant to the determination of this Motion. A brief summary of those facts, in the light most favorable to Crescent are as follows.

DeGennaro was a 51% shareholder of Innovative Electrical Services, Inc. ("IES"). Bartolomeo was a 49% shareholder.

The facts, as alleged by Crescent in the Complaint[3], can briefly be summarized as follows:

Innovative, a limited liability company of which I was a 49%, non-controlling member, purchased certain supplies from Crescent, a materialman. Innovative did not pay

---

[3] Since a motion to dismiss is decided based on the allegations contained within the Complaint, Defendant, for the limited purpose of this Motion, deems the facts contained therein to be true. However, Defendant reserves its right to fully answer the allegations contained in the Complaint in the event that this Motion is denied.

for certain of those supplies. Crescent commenced the State Court Action against Innovative, DeGennaro, and the Debtor on grounds of breach of contract, piercing the corporate veil and trust fund violations under New York Lien Law Article 3-A. This Complaint attaches the State Court Complaint as an exhibit and substantially relies upon allegations made in the State Court Action.

The Court, in the State Court Decision, necessarily found that the Debtor lacked "complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiffs injury." See Page 5, State Court Decision.

The State Court determined:

> Therefore, the causes of action for breach of contract, account stated, unjust enrichment, goods sold delivered and accepted, to pierce the corporate veil, and recovery of attorneys' fees as asserted against Bartolomeo are dismissed pursuant to CPLR 321 l(a)(7).

With respect to the claims under Article 3-A of the Lien Law, upon which this Complaint is based, the Court determined:

> Here, the complaint alleges that "Bartolomeo and DeGennaro received trust assets/and or diverted trust assets in violation of Article 3-A of the Lien Law" (complaint, 1183, 96). However, the complaint fails to state with any specificity how Bartolomeo converted the funds for his own use, or that he knowingly participated in Innovative's alleged diversion of funds. Therefore, the Court dismisses the sixth and seventh causes of action, and grants Plaintiff leave to serve an amended complaint to replead these claims.

This Complaint mimics virtually word for word the State Court Complaint that the Court, in the State Court Decision found deficient. Further, the Debtor notes that Provident Bank, a creditor of the Debtor, itself drew 50% of all receivables collection. Thus, Provident participated in any diversion of trust funds.

4

# ARGUMENT

## POINT I

### CRESCENT CANNOT MEET ITS BURDEN OF PLEADING IN ORDER TO ESTABLISH A RIGHT TO DENIAL OF DISCHARGEABILITY OR DISCHARGE

The purpose of granting a debtor bankruptcy relief and ultimately a discharge pursuant to the provisions of Chapter 7 is to give debtors a chance for a fresh start after a debtor has suffered a financial crisis.

The purpose of allowing bankruptcy relief is to provide the debtor with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934). "Exceptions to dischargeability are narrowly construed, (internal citations omitted), an approach that implements the " 'fresh start' policy of the Bankruptcy Code." National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996). "To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." Smith v. Meyers (In re Schwartz & Meyers), 130 B.R. 416, 422 (Bankr.S.D.N.Y. 1991). Based upon the narrow construction of the dischargeability provisions of the Bankruptcy Code, the instant complaint must be dismissed.

The Complaint asserts claims for nondischargeability under 11 U.S.C. §523(a)(2), (4) and (6). The Debtor will discuss each of these claims in turn. None of these grounds apply to bar the alleged claims of Crescent from discharge.

5

## POINT II

### THE DEBTOR'S ALLEGED DEBTS TO CRESCENT
### DO NOT MEET ANY EXCEPTION TO
### DISCHARGEABILITY

In order to trigger the application of nondischargeability under 11 U.S.C.

§523(a)(2) or (4) the Debtor's actions must involve at least some form of deceit, and lack

of consent on the part of the victim.

### A.  THE COMPLAINT FAILS TO PLEAD A TECHNICAL OR
### PRE-EXISTING TRUST IN THE SECOND CAUSE OF
### ACTION AND THUS DOES NOT STATE A CLAIM FOR
### DISCHARGEABILITY UNDER 11 U.S.C. §523(a)(4)

11 U.S.C. § 523 (a)(4) states, in relevant part, that "(a) A discharge under section

727 . . . of this title [the Code] does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

larceny; . . .".  11 U.S.C. § 523(a)(4).  "Exceptions to discharge under § 523(a) must be

strictly construed in favor of the debtor in order to comply with the "fresh start" policy

underlying the Bankruptcy Code.  Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654,

112 L.Ed.2d 755 (1991); Chao v. Duncan (In re Duncan), 331 B.R. 70, 76 (Bankr.

E.D.N.Y. 2005).

As the Supreme Court stated, "exceptions to discharge 'should be confined to

those plainly expressed.'"  In re Kern, 567 B.R. 17, 29 (Bkrtcy.E.D.N.Y., 2017).  See

also Bullock, Id. ("That risk "must be of such a nature and degree that, considering the

nature and purpose of the actor's conduct and the circumstances known to him, its

disregard involves a gross deviation from the standard of conduct that a law-abiding

person would observe in the actor's situation."); Shao Ke v. Jianrong Wang, 628

Fed.Appx. 10, 12 (2d Cir. 2015) "defalcation under 11 U.S.C. § 523(a)(4) requires a

6

showing that the faithless fiduciary committed an "intentional wrong," which incorporates a standard of conscious misbehavior or extreme recklessness.").

Any analysis of a claim under 11 U.S.C. § 523(a)(4) must be guided by the U.S. Supreme Court's decision in <u>Bullock, Id.</u>.  The Supreme Court in <u>Bullock, Id.</u> held that where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] [under § 523(a)(4)] requires an intentional wrong." 133 S.Ct. at 1759–1760.  The Court included as intentional "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent."  Id.  Quoting the Model Penal Code, the Supreme Court stated:  "[w]here actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty."  Id. (quoting ALI, Model Penal Code § 2.02(2), p. 226 (1985)).

The <u>Bullock, Id.</u> Court added: "[t]hat risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."  Id. (emphasis added).  <u>See</u> <u>In re Kern</u>, 542 B.R. 87, 98 (Bkrtcy.E.D.N.Y., 2015) ("Kern I") ("The <u>Bullock</u> standard is similar to that previously applied by the Second Circuit, which had defined defalcation as "conscious misbehavior or extreme recklessness."  <u>In re Hyman</u>, 502 F.3d 61, 68–69 (2d Cir.2007) ("standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable."); See also <u>Shao</u>

7

Ke v. Jianrong Wang, 628 Fed.Appx. 10, 12 (2d Cir. 2015) "defalcation under 11 U.S.C.

§ 523(a)(4) requires a showing that the faithless fiduciary committed an "intentional

wrong," which incorporates a standard of conscious misbehavior or extreme

recklessness."). The Court in In re Hyman, 502 F.3d 61, 68 (2d Cir. 2007) held that

"defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme

recklessness-a showing akin to the showing required for scienter in the securities law

context."

Not all relationships are fiduciary relationships. See In re Larsen, 2018 WL

4006935, at *5 (Bkrtcy.E.D.N.Y., 2018) ("A fiduciary relationship sufficient for §

523(a)(4) "must be pursuant to either an express or technical trust, not to 'constructive or

implied trusts.'").

The Court in In re Gucciardo, 577 B.R. 23 (Bkrtcy.E.D.N.Y., 2017) stated:

> Section 523(a)(4) excepts from discharge any "debt for fraud or
> defalcation while acting in a fiduciary capacity, embezzlement, or
> larceny". 11 U.S.C. § 523(a)(4). The term "fiduciary," for the purposes
> of § 523(a)(4), is a matter of federal law. Wisell, 494 B.R. at 38. See
> Grow Up Japan, Inc. v. Yoshida (In re Yoshida), 435 B.R. 102, 109
> (Bankr. E.D.N.Y. 2010); E. Armata, Inc. v. Parra (In re Parra), 412
> B.R. 99, 104 (Bankr. E.D.N.Y. 2009); Chao v. Duncan (In re Duncan),
> 331 B.R. 70, 80 (Bankr. E.D.N.Y. 2005). A fiduciary relationship
> under § 523(a)(4) "generally involve[s] express trusts, technical trusts
> or statutorily imposed trusts." Yoshida, 435 B.R. at 108.

> In re Gucciardo, 577 B.R. 23, 33 (Bkrtcy.E.D.N.Y., 2017)

The relationship between Crescent and the Debtor, without more, is not a fiduciary

relationship.

Further, there must be a trust res.  See, e.g., In re Halpin, 370 B.R. 45, 49

(N.D.N.Y., 2007, aff'd In re Halpin, 566 F.3d 286 (2d Cir. 2009)) ("The source of the

funds carries a significant legal difference.  Employee contributions are held in trust by

an employer, until they are paid to a benefit plan…."). In In re Wong, 291 B.R. 266

(Bankr.S.D.N.Y. 2003) the Court stated:

> For purposes of section 523(a)(4), a debtor's fiduciary obligations must
> have been in existence prior to, rather than by virtue of, any claimed
> misappropriation of funds: [c]onstructive trusts or trusts *ex malificio*
> do not satisfy the requirements of section 523(a)(4). *See In re Harrell,*
> 173 F.3d 850, 1999 WL 150278; *In re Wright,* 282 B.R. at 510.
> Because the Complaint fails to plead the existence of an express or
> technical trust or any other express fiduciary relationship that *279
> existed prior to the misappropriation, the Complaint fails to adequately
> plead a fiduciary relationship for purposes of section 523(a)(4).

> In re Wong, 291 B.R. 266, 278–79 (Bkrtcy.S.D.N.Y.,2003)

See also In re Kern, 567 B.R. 17, 29 (Bkrtcy.E.D.N.Y., 2017) ("Section 523(a)(4)

of the Bankruptcy Code applies only to express or technical trusts, not to constructive

trusts, implied trusts, or trusts implied on the basis of wrongful conduct. Duncan, 331

B.R. at 77 (citations omitted); Watterson, 524 B.R. at 451; Kern, 542 B.R. at 95. To

establish the existence of an express statutory trust, Plaintiff must show that property or

money was entrusted to a "trustee," that a statute creates or identifies a "fiduciary" duty,

and that the trust was in place when the defalcation giving rise to the debt occurred.").

Thus, Plaintiff has not nor cannot plead fraud or defalcation in a fiduciary capacity.

The Court, in In re Wong, 291 B.R. 266 (Bankr.S.D.N.Y. 2003) states:

> For purposes of section 523(a)(4), a debtor's fiduciary obligations must
> have been in existence prior to, rather than by virtue of, any claimed
> misappropriation of funds: [c]onstructive trusts or trusts ex malificio
> do not satisfy the requirements of section 523(a)(4).  See In re Harrell,
> 173 F.3d 850, 1999 WL 150278; In re Wright, 282 B.R. at 510.
> Because the Complaint fails to plead the existence of an express or
> technical trust or any other express fiduciary relationship that existed
> prior to the misappropriation, the Complaint fails to adequately plead a
> fiduciary relationship for purposes of section 523(a)(4). 291 B.R. 266,
> 278, 279.

Even assuming the underlying facts as pleaded by Defendant are true (as the Court must

under Fed.R.Civ.P. Rule 12(b)(6)) the First Claim for Relief in the Complaint however

fails to state a cause of action and must be dismissed.

The Court, in Castellotti v Free, 27 N.Y.S.3d 507, 2016 WL 869828 (N.Y.A.D. 1

Dept., 2016) stated:

> The complaint alleges that Lisa owed Peter a fiduciary duty of care
> and loyalty, and that Lisa breached that duty in two ways: by using the
> funds of Whole Pies for her own personal purposes, and by
> committing a host of improper acts, including failing to pay the
> company's sales and payroll taxes, filing a false insurance application,
> and operating John's Pizzeria in violation of numerous administrative
> regulations. To state a claim for breach of fiduciary duty, a plaintiff
> must allege the existence of a fiduciary relationship, misconduct by the
> other party, and damages directly caused by that party's misconduct
> (see Pokoik v. Pokoik, 115 A.D.3d 428, 429, 982 N.Y.S.2d 67 [1st
> Dept.2014] ).
>
> The motion court properly dismissed the fiduciary duty claims because
> the complaint fails to allege that a fiduciary relationship existed
> between Peter and Lisa.
>
> Castellotti v Free, No. 158162/12, 16143, 27 N.Y.S.3d 507, 517, 2016
> N.Y. Slip Op. 01625, 2016 WL 869828 (N.Y.A.D. 1 Dept., Mar. 08,
> 2016).

The decision in Wong, Id. details what a plaintiff needs to plead and prove in order to

assert a cause of action for nondischargeability on the basis of embezzlement. The Court

stated:

> Bankruptcy courts look to federal common law to define
> embezzlement as the "fraudulent appropriation of property by a person
> to whom such property has been entrusted or into whose hands it has
> lawfully come." Moore v. United States, 160 U.S. 268, 269, 16 S.Ct.
> 294, 40 L.Ed. 422 (1895), quoted in In re Bevilacqua, 53 B.R. 331,
> 333 (Bankr.S.D.N.Y.1985).  The elements of a claim based on
> embezzlement include:
>
> (1) property owned by another is rightfully in the possession of debtor;

(2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor;  and

(3) circumstances indicating fraudulent intent.

 See In re Scheller, 265 B.R. at 39.  See also, In re Dakota, 284 B.R. 711, 721 (Bankr.N.D.Cal.2002);  Matter of Weber, 892 F.2d at 539; In re Tilley, 286 B.R. 782 (Bankr.D.Colo.2002)….

In order to plead embezzlement, the Bank must allege that the Debtor misappropriated funds for her own purpose and that she did so with fraudulent intent….

## B.  DEFENDANT MUST SUBJECTIVELY INTEND TO INJURE CRESCENT FOR A DEBT TO BE HELD NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)

11 U.S.C. §523(a)(6), one of the provisions of the Bankruptcy Code upon which

Crescent relies, states as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— for willful and malicious injury by the debtor to another entity or to the property of another entity.

The United States Supreme Court, in its decision in Kawaauhau v. Geiger, 523

U.S. 57, 118 S.Ct. 1974 (1998) sharply limited the applicability of this Circuit's earlier

decision in In re Stelluti, 94 F.3d 84 (2d Cir. 1996) and further restricted the definition of

"willful and malicious." The Court stated that "debts arising from recklessly or

negligently inflicted injuries do not fall within the compass of § 523(a)(6)." 118 S.Ct. at

978.  The Court stated further:

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."  Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind

11

the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."   Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added). Kawaauhau, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).  118 S.Ct. 974, 977.

In In re Krautheimer, 241 B.R. 330 (Bankr.S.D.N.Y.1999) the Court stated:

> The term "willful" means deliberate or intentional. In re Stelluti, 94 F.3d 84, 87 (2d Cir.1996). Recently, the Supreme Court clarified the scope of "willful" in Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Kawaauhau addressed the dischargeability of a debt based on a medical malpractice judgment arising from the doctor/debtor's negligent or reckless conduct. The Court identified the issue as whether Section 523(a)(6) covers acts done intentionally which cause injury, or only acts done with the actual intent to cause injury. Id. at 977. The Supreme Court stated:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury". Id. at 977. Thus, under Kawaauhau, it is the resulting harm or injury which must have been willful or intentional, not the action by the debtor that caused the harm. Kawaauhau, 118 S.Ct. at 977; In re Hartley, 869 F.2d 394, 395 (8th Cir.), reh'g denied, 874 F.2d 1254 (1989). 241 B.R. 330, 340.

Thus, the Debtor's debt to Crescent is not excepted from discharge by virtue of "willful or malicious injury". The Complaint must therefore be dismissed for the additional reason that, as the State Court decision points out, wholly lacks specificity.

12

In the case <u>In re Dziuk</u>, 218 B.R. 485 (Bankr.D.Minn. 1998) the Court held, where the debtor was convicted of arson in connection with a fire that damaged the creditor's property, that the resulting debt to a person who was not the target of the fire was **<u>dischargeable</u>**.  The Court stated:

> As a result, in order for Allstate to prevail on a § 523(a)(6) claim, it must demonstrate that it suffered injury as a result of an intentional tort by Dziuk (i.e., Dziuk's actions were willful) and that Dziuk's actions were targeted at Hockema (i.e., Dziuk's actions were also malicious).
>
> But for the prior criminal proceedings, it would be entirely clear that Allstate would have failed on both counts.  Dziuk intended only to burn his own icehouse and even then, went to bed thinking that he had failed in the attempt.  He did not intend to set fire to Hockema's home and did not intend to damage Hockema's residence.  This is obvious, both from his testimony and his actions in going inside the home and falling asleep.  No doubt he was negligent, but his actions were not willful.  **<u>It is also clear that he did not act with maliciousness in that his actions were targeted at his own property in a misguided attempt to prove his love for his girlfriend</u>** and were not targeted at Hockema. (emphasis supplied)
>
> <u>In re Dziuk</u>, 218 B.R. 485, 488.

Nowhere in Crescent's complaint are the requirements for nondischargeability of Defendant's indebtedness to Crescent sufficiently pled to reach that result.

13

**C.  THE NONDISCHARGEABILITY COMPLAINT RELATING
TO ACTUAL FRAUD UNDER 11 U.S.C. §523(a)(2) MUST
BE DISMISSED**

One of the grounds on which the Complaint seeks to declare the Debtor's alleged

debts to Crescent  nondischargeable under 11 U.S.C. § 523(a)(2) on the basis of "fraud".

The State Court dismissed this claim with prejudice and on the issue of issue preclusion it

is entitled to conclusive deference.

In addition, in order to plead a <u>prima facie</u> case of fraud, DeGennaro must allege

representation of falsity, scienter, deception and injury. <u>Schlaifer Nance & Co. v. Estate</u>

<u>of Andy Warhol</u>, 119 F.3d 91, 98 (2d Cir. 1997); <u>Eternity Global Master Fund Ltd. v.</u>

<u>Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168 (2d Cir. 2004).  That misrepresentation by

the Debtor must be to the injured parties and not to a third party. See <u>Cement and</u>

<u>Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and</u>

<u>Annuity Fund v. Lollo</u>, 148 F.3d 194, 196 (2d Cir. ,1998). ("We hold that a plaintiff does

not establish the reliance element of fraud for purposes of ERISA or New York law by

showing only that a third party relied on a defendant's false statements."). In this case

most of the allegations, such as they are, allege misrepresentations to Innovative.

11 U.S.C. § 523(a)(2)(A) states as follows:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)
of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial condition;

Thus, the Complaint must adequately plead actual fraud.

14

The Court, in Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of

N.Y., 375 F.3d 168 (2d Cir. 2004)  explained the elements of fraud in New York, as

applied by the Second Circuit.  The Court stated:

> To state a claim for fraudulent misrepresentation under New York law
> "a plaintiff must show that (1) the defendant made a material false
> representation, (2) the defendant intended to defraud the plaintiff
> thereby, (3) the plaintiff reasonably relied upon the representation, and
> (4) the plaintiff suffered damage as a result of such reliance." Banque
> Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d
> 146, 153 (2d Cir.1995). Fraud must be pled with particularity,
> Fed.R.Civ.P. 9(b), which requires that the plaintiff "(1) detail the
> statements (or omissions) that the plaintiff contends are fraudulent, (2)
> identify the speaker, (3) state where and when the statements (or
> omissions) were made, and (4) explain why the statements (or
> omissions) are fraudulent."
>
> Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
> 375 F.3d 168, 186–87 (2d Cir. 2004).

These elements of a fraud claim are not properly pleaded in the Complaint.  There

is not a **single** allegation in the Complaint identifying any false representation(s) made by

the Debtor to DeGennaro. The Complaint absolutely does not plead "where and when the

statements (or omissions) were made."

## POINT III

### THE COMPLAINT FAILS TO PLEAD A
### VIOLATION OF ARTICLE 3-A OF THE LIEN
### LAW

As previously discussed, the Complaint asserting an exception to dischargeability

is based, in part, on 11 U.S.C. §523(a)(4). The "fiduciary" or "trust" relationship is

alleged to be created under Lien Law Article 3-A, Lien Law Section 70 et. seq. Section

72(1) of the Lien Law states:

> 1. Any transaction by which any trust asset is paid, transferred or
> applied for any purpose other than a purpose of the trust as stated in

15

> subdivision one or subdivision two of section seventy-one, before
> payment or discharge of all trust claims with respect to the trust, is a
> diversion of trust assets, whether or not there are trust claims in
> existence at the time of the transaction, and if the diversion occurs by
> the **voluntary act of the trustee or by his consent** such act or consent
> is a breach of trust. (emphasis on "voluntary" supplied)

Plaintiff has failed to allege that Bartolomeo has made such a voluntary act of that any action contrary to Lien Law Article 3-A was taken with his consent. The Complaint further does not allege the ability to trace the alleged diversions to Bartolomeo. This inability to so plead is fatal to the Complaint. Knowledge of the diversion is essential. The Court, in <u>Mallis Supply Company, INC. and Reliable Equipment Corp. Plaintiffs, v. ABN Associates LLC, Lafayette Avenue LLC, JRM Construction Management LLC, Danica Group LLC, Vigilant Insurance Company and Thomas Andreadakis, Defendants</u>, Supreme Court, Bronx, Index No. 24952/2015E (a copy of the decision is annexed hereto as Exhibit "A") stated:

> Summary judgment must also be denied on the cause of action for
> violation of Article 3-A of the Lien Law. On a motion for summary
> judgment, plaintiffs must be put to their proofs. The requirements of
> the Lien Law are extensive and plaintiffs have not made a prima facie
> showing of entitlement under the provisions of the Lien Law and the
> facts of this case as applied to the law.

Article 3-A liability applies the strictures of the laws of trusts to the imposition of personal liability. See, e.g. <u>Ippolito v. TJC Development, LLC</u>, 920 N.Y.S.2d 108, 118, 83 A.D.3d 57, 70–71 (N.Y.A.D. 2 Dept.,2011) ("While it is not expressly stated in Lien Law § 79–a(1)(b) that the individual officers or agents of a corporation, as Pointing and Torto are alleged to be, may be liable in a civil action pursuant to Lien Law article 3–A for the improper diversion of trust funds, there is authority for this position…..However, in determining that an officer could be liable for the diversion of trust funds, the Court

relied on, among other things, the principle that "[a]n officer or agent of a corporation is personally liable for his acts which constitute a conversion of the property of a third person"); Edgewater Const. Co., Inc. v. 81 & 3 of Watertown, Inc., 769 N.Y.S.2d 343, 346, 1 A.D.3d 1054, 1057 (N.Y.A.D. 4 Dept.,2003) ("Corporate officers also may be personally liable for trust funds otherwise wrongfully diverted by their corporation, provided that they knowingly participated in that diversion by the corporation") See also Bonham v. Coe, 292 N.Y.S. 423, 429, 249 A.D. 428, 433 (N.Y.A.D. 4 Dept. 1937) ("The illegality of the transfer, however, does not, as matter of law, give plaintiff a right to recover from Katz and Zamos the $3,225.10 received by them as a part of the consideration for the apartment house, or to recall the money paid to the banks on their mortgages. That can only be done if the recipients took these payments with notice or knowledge that they were trust funds, and that such funds had been improperly diverted. Mere knowledge of the source of the money is not sufficient; there must also be knowledge of the violation of a trust duty."). Lien Law §72(1) appears to codify the requirement of actual rather than constructive knowledge.

An Article 3-A claim is a statutory claim for breach of trust and conversion. The Plaintiff must plead and prove a "possessory right or interest in" the allegedly converted funds." See Fulton v. Hankin & Mazel, PLLC, 18 N.Y.S.3d 654, 658, 132 A.D.3d 806, 809 (N.Y.A.D. 2 Dept.,2015).

In a Second Circuit decision applying trust law, the Court held that in order for conversion to lie, the Debtor must have converted specific property. The Court in In re Halpin, 566 F.3d 286 (2d Cir. 2009)  stated:

> Trust law similarly supports this analysis…Under well-settled
> principles of trust law, a debtor-creditor relationship is not a fiduciary

> relationship. See Restatement (Third) of Trusts § 5(k) & cmt. k
> (indicating that the relationship of a debtor to a creditor is not fiduciary
> in nature; rather the creditor has a personal claim against the debtor);
> *see also id.* at § 5(i) & cmt. i (stating that a contract to convey property
> does not give rise to a fiduciary relationship). Indeed, the Restatement
> of Trusts explains that, with regard to amounts deducted by an
> employer for eventual contribution on behalf of an employee, "[a] trust
> arises as to the amounts deducted as soon as they are either set aside
> by the employer for the employees' purposes or paid over to another
> person for those purposes. Until then, the employer's obligation is
> merely a debt, with the 'obligee' ... holding a chose in action ... in
> trust." *Id.* at § 5 cmt. k.
>
> Applying these principles here, we hold that the unpaid employer
> contributions were not assets of the plans.
>
> In re Halpin, 566 F.3d 286, 290 (2d Cir. 2009).

Plaintiff must, in accordance with the law of trusts, plead and prove the ability to trace

the funds to Bartolomeo. See I-T-E Imperial Corporation-Empire Division v. Bankers

Trust Co., 423 N.Y.S.2d 491, 492, 73 A.D.2d 861, 861 (N.Y.A.D., 1980)(" The problem

then becomes one of tracing the trust funds."). See also In re New York Title & Mortg.

Co., 297 N.Y.S. 524, 527, 163 Misc. 454, 456 (N.Y.Sup. 1937) ("But it is the general rule

as well in a court of equity as in a court of law, that in order to follow trust funds and

subject them to the operation of the trust, they must be identified.'").

Without proving or even pleading the ability to trace assets into Bartolomeo, the

Article 3-A claims must be dismissed as well as the claims under 11 U.S.C. §523(a)(4)

which allegedly spring from the Lien Law Article 3-A violations.

POINT IV

**PLAINTIFF ALLEGES IN PARALLEL
DISCHARGEABILITY ACTION THAT
DEGENNARO IS THE MAJORITY SHAREHOLDER
OF INNOVATIVE AND IS THUS ESTOPPED FROM
INCONSISTENT PLEADING THAT THE DEBTOR
IS THE MAJORITY SHAREHOLDER OF
INNOVATIVE**

The Debtor attaches certain documents outside of the pleadings, but necessarily

incorporated into the pleading, as well as those with respect to which the Court should

take judicial notice. The attachment of documents referred to and described in the

Complaint, but not annexed, is proper. See, e.g. Halebian v. Berv, 644 F.3d 122, 131 (2d

Cir. 2011) ("There are exceptions to Rule 12(b)(6)'s general prohibition against

considering materials outside the four corners of the complaint. For example, it is well

established that on a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), the court may also rely upon "documents attached to the complaint as exhibits[

] and documents incorporated by reference in the complaint."); DiFolco v. MSNBC

Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for

failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts

alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint. (internal citations omitted) Where a document

is not incorporated by reference, the court may neverless (sic) consider it where the

complaint "relies heavily upon its terms and effect," thereby rendering the document

"integral" to the complaint.")

For the purposes of a Motion to Dismiss the Court takes as true the factual

allegations concerning Defendant's actions and omissions. Therefore the Debtor is

entitled to show the Court, without commentary, the documents referenced in the

19

Complaint but not attached to same. Their consideration in the context of a motion to dismiss is appropriate.

The doctrine of judicial estoppel prevents a party from playing "fast and loose" with the Court system.The Supreme Court, in New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) sets forth the federal doctrine of judicial estoppel as requiring both an inconsistent position by a party and that party prevailing. The Court stated:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").
>
> New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001)

"The equitable doctrine of judicial estoppel has traditionally been used by courts to prevent a party from adopting inconsistent positions in subsequent legal proceedings." In re Galeries des Monnaies of Geneva, Ltd. 62 B.R. 224 (S.D.N.Y. 1986) affirming In re Galeries des Monnaies of Geneva, Ltd. 55 B.R. 253 (Bkrtcy. S.D.N.Y. 1985).  The Court

in <u>In re Galeries des Monnaies of Geneva, Ltd.</u> quoted <u>Davis v. Wakelee</u>, 156 U.S. 680,

15 S.Ct. 555, 558 (1895) in reaching its decision.  The Court stated:

> "It may be laid down as a general proposition that, where a party
> assume a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his
> interests have changed, assume a contrary position, especially if be to
> the prejudice of the party who has acquiesced in the position formerly
> taken by him." <u>In re Galeries des Monnaies of Geneva, Ltd.</u> 62 B.R.
> 224, 225 quoting <u>Davis v. Wakelee</u>, 156 U.S. 680, 15 S.Ct. 555, 558
> (1895).

In <u>In re Roundabout Theatre Company,</u> 131 B.R. 14, 18 (S.D.N.Y. 1991) the

court stated:

> "Judicial estoppel is intended to protect the integrity of the judicial
> process by preventing the intentional assertion of inconsistent
> positions in different proceedings by one party (citation omitted)  The
> party asserting the affirmative defense of judicial estoppel must show:
>
> (1) an unequivocal assertion of law or fact by a party in one judicial
> proceeding, (2) the assertion by that party of an intentionally
> inconsistent position of law or fact in a subsequent judicial proceeding,
> (3) in order to mislead the court and obtain unfair advantage as against
> another party. (citations omitted)."

In <u>Rosenschein v. Kleban</u>, 918 F.Supp. 98, 106 (S.D.N.Y. 1996) the Court held

that judicial estoppel exists to protect the integrity of the judicial system:

> While judicial estoppel should be applied with care so as not to
> impinge on a party's ability to plead alternative and inconsistent
> theories of its case, the Second Circuit has recognized the applicability
> of the doctrine to situations in which the court must protect the
> integrity of the judicial system.  See *Bates v. Long Island Railroad
> Co.*, 997 F.2d 1028, 1037-38 (2d Cir.), cert. denied, 510 U.S. 992, 114
> S.Ct. 550, 126 L.Ed.2d 452 (1993).  The two elements that the party
> seeking the application of judicial estoppel must establish are:  "[1] the
> party against whom the estoppel is asserted must have argued an
> inconsistent position in a prior proceeding;  and [2] the prior
> inconsistent position must have been adopted by the court in some
> manner."  Id., at 1038. <u>Rosenschein v. Kleban</u>, 918 F.Supp. 98, 106.

Crescent cannot allege that both DeGennaro and the Debtor are majority shareholders of Innovative. This distinction is crucial inasmuch as Crescent is estopped from pleading that the Debtor mishandled proceeds subject to the trust impressed by Article 3-A of the Lien Law.

### POINT V

### CRESCENT IS BOUND BY THE STATE COURT'S DETERMINATION WITH RESPECT TO THESE CLAIMS

It is elementary that Plaintiff cannot relitigate previously entered decisions which are adverse to it. This is based both on the twin and related doctrines of: 1) *res judicata* and collateral estoppel; and 2) the "Rooker-Feldman Doctrine". See, e.g. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Kelleran v. Andrijevic, 825 F.2d 692 (2d Cir.1987), cert. denied, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 & n. 16, 103 S.Ct. 1303, 1314 & n. 16, 75 L.Ed.2d 206 (1983). The doctrines of res judicata and collateral estoppel, in general, preclude the relitigation of matters a court previously decided. The Rooker-Feldman doctrine precludes, as jurisdictional issue, a federal court from sitting as an appellate court over a state court.

Crescent's claims against the Debtor in the State Court Action were dismissed by the State Court. On the fraud and veil-piercing allegations, those claims were dismissed with prejudice. The Court, in the State Court decision, necessarily found that the Debtor lacked "complete domination of the corporation in respect to the transaction attacked; and

(2) that such domination was used to commit a fraud or wrong against the plaintiff which

resulted in plaintiffs injury." See Page 5, State Court Decision.

The State Court determined:

> Therefore, the causes of action for breach of contract, account stated,
> unjust enrichment, goods sold delivered and accepted, to pierce the
> corporate veil, and recovery of attorneys' fees as asserted against
> Bartolomeo are dismissed pursuant to CPLR 3211(a)(7).

While Crescent was granted leave to replead the Article 3-A claims, it chose not

to rectify the deficiencies found by Judge Kennedy in the State Court decision in its

pleading in this action.

The State Court determined:

> Here, the complaint alleges that "Bartolomeo and DeGennaro received
> trust assets/and or diverted trust assets in violation of Article 3-A of
> the Lien Law" (complaint, 1183, 96). However, the complaint fails to
> state with any specificity how Bartolomeo converted the funds for his
> own use, or that he knowingly participated in Innovative's alleged
> diversion of funds. Therefore, the Court dismisses the sixth and
> seventh causes of action, and grants Plaintiff leave to serve an
> amended complaint to replead these claims.

This Complaint mimics virtually word for word the State Court Complaint that

the Court, in the State Court decision found deficient. Thus, Plaintiff has effectively been

granted leave to replead. Since this Complaint adds nothing new, this Court should

likewise dismiss this action.

The Court, in Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.  250 N.Y.

304 (N.Y. 1929) stated:

> "The effect of the judgment is not at all dependent upon the
> correctness of the verdict or finding upon which it was rendered"
> (Wilson's Executor v. Deen, 121 U. S. 525; American Exp. Co. v.
> Mullins, 212 U. S. 311). Error, if there was any, must be corrected by
> direct review (Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 325).
> Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.  250 N.Y. 304,
> 306 (N.Y. 1929).

23

Thus, Crescent is bound to the State Court's determination. Defendant respectfully requests that if the Motion to Dismiss is granted, Plaintiff should be denied leave to replead inasmuch as "futility (in repleading) is a 'good reason' to deny leave to amend." Chill v. General Electric Company, 101 F.3d 263 (2d Cir. 1996); Acito v. Imcera Group, Inc. 47 F.3d 47, 55 (2d Cir. 1995).   Movant strongly submits that there is not *any* set of facts that Plaintiff could plead or prove against Movant that would cure the pleading deficiencies.  The repleading would be futile inasmuch as Plaintiff could not conceivably make out a prima facie case at trial on any of the grounds of liability alleged in the Complaint against Movant.

The State Court, in the State Court Decision dismissed the trust fund diversion claims in the Complaint with leave to replead. CPLR §3016(b) states "(b) Fraud or mistake. Where a cause of action or defense is based upon   misrepresentation, fraud, mistake, wilful default, breach of  trust  or  undue  influence,  the  circumstances constituting  the  wrong shall be  stated in detail." Fed.R.Civ.P. Rule 9(b) states: "(b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The rules of pleading are virtually identical, and Plaintiff was on notice as to the need for specificity. Plaintiff did not avail itself of the opportunity and this Complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth herein, the Defendant's Motion to dismiss should be

granted in all respects.

Dated:    White Plains, New York
          November 19, 2019

                                        RATTET PLLC


                              By:    /s/  Robert L. Rattet
                                     ROBERT L. RATTET
                                     202 Mamaroneck Avenue
                                     Suite 300
                                     White Plains, New York 10601
                                     (914) 381-7400

                                     *Attorneys for Anthony Bartolomeo,*
                                     *Debtor/Defendant*

25